Good morning, your honors. Brenton Aiken from the law office. Brenton Aiken, hands from the law office of Jerry L. Sterling on behalf of the appellant. Keep your voice up, would you please, counsel? Sorry. Brenton Aiken, hands on behalf of appellant Ray Nichols. May I reserve three minutes for rebuttal? Go ahead. Thank you. So, no reasonable officer could believe in this case that this was anything but a civil dispute, and it's already been long established that civil disputes cannot give rise to probable cause for an arrest. The appellees outright admit that the officers looked at the rental agreement. They call it a rental agreement in this case, and I'm quoting here from the language of their answering brief. They say that they attempted to enforce the rental agreement dictate. Now, if none of this is disputed, then it appears that the appellees are admitting that they were attempting to enforce the terms of a contract. Let's assume for a second that the district court was incorrect in finding that there was probable cause for these arrests. Did the district court independently reach the issue of qualified immunity? They reached the issue of qualified immunity, but they didn't go into it in any sort of way. Well, as I read the district court's order, Magistrate Judge Bristow, who's sitting by consent, said there's qualified immunity because there was probable cause. Because these facts amount to probable cause, therefore, there would have also been qualified immunity, as opposed to doing a separate analysis, which would have been even if there wasn't probable cause, to these facts, it would have been clear to every reasonably objective police officer that there wasn't probable cause. So if I'm right in thinking that that inquiry remains in the case, should we address it in the first instance, or should we send it back to the district court and say, no probable cause here. You have to determine whether or not there was qualified immunity. I believe that in the interest of just clarity, the court should address whether there's a violation and also address qualified immunity to take both the saucier prongs, take them in the traditional order. One of my difficulties with that is it's at least in some small measure a factual inquiry. Yes, I agree. And the court doesn't seem to have made it. It seems to me that there were several factual disputes that the court resolved in the favor of the defendants, in this case now appellees, especially in terms of the timing as to certain alleged events, and it used those to establish probable cause. So let's again assume that there is no probable cause. Tell me why there's no qualified immunity here. Well, there's no qualified immunity here because there's a case that is very factually analogous, and that would be the Allen v. Portland case. So that case involved, if you read the brief, it involves an officer who shows up, and there's an allegation of theft, and the officer just takes one person's side. He's presented with a document. There's a document in this case, which was a rental agreement. In that case, it was a receipt. And the court, reviewing those facts, determined that he should have known that that was a civil dispute. Just a bare allegation of theft is insufficient. And the court should also note that there's case law that says that when there's a specific intent crime, there must be probable cause for that element, specific intent to steal. So in this case, you have not only did the complaining witness note that there was a claim of right pursuant to a rental agreement with SuperCare, but they were actually presented with a physical copy of that, and they admit to trying to resolve the terms of it. So it seems that no qualified immunity can't apply here because it falls so squarely within well-defined rules that have been on the books for at least since 1995 when Allen was decided. And since then, we have the Stevens v. Rose case, which involved an officer who arrested somebody at the behest of a DA for a civil dispute. We have the Gallagher case, which was an unpublished disposition, by the way, but that was in 2008. That involved a lease agreement for an apartment and an allegation of burglary. Now, I would like to note that, well, does that answer your question about why qualified immunity should apply? It does. Right. What are we to make of the fact that the crime for which the officer claimed he had probable cause to arrest has an element that you have to permanently deprive someone of the property? Is that of any significance with regard to resolving the qualified immunity issue? Yes. Well, for purposes of resolving the qualified immunity issue, it's useful to the extent that there's almost a complete absence of evidence for that, so that for the purpose of determining whether he was a reasonable officer acting reasonably under these circumstances, it would be relevant to that extent. But, yes, there was no evidence to support an intent to permanently deprive, especially because we have this lease agreement, which, again, they were physically present. Well, not only the lease agreement. Wasn't the mattress returned to the hospital with Daniel Nichols? Yes, he did. That's another fact that, yes, Daniel did, in fact, return with the mattress, and so that is also something I think the court should consider. What obligation in this case does the – it almost sounds to me as if this is an incomplete investigation by the police officer. The nurse says, in effect, stop thief, you're running away with the mattress. They bring the mattress back and say, no, no, we're not stealing it, we have this lease agreement. And the officer says, basically, well, I glanced at it, but I never read it. No. So I know those are not exactly the facts, and they're more favorable to your client than that. But given that, is the constitutional violation the refusal of the officer to do what a reasonable officer would have done at that point, which is look at the lease agreement and see that these guys actually had some right to the air mattress? Well, just to be clear, and I do agree that it does appear to be a deficient investigation in that regard, but we're not claiming that there was any particular right for him to do more investigation. So I guess that's a – you're leading up to the question that bothers me here. So what if he just said, well, that's what you say, and the other guy says you stole it, and I believe him and I don't believe you. Why doesn't that give enough – The facts that he was presented with clearly and unequivocally present a civil dispute. But the fact that it's a classical – I'm sorry, I didn't mean to talk over you. Had you finished? It's just a classical civil dispute. It's a contract dispute, and they were presented with the contract. So the fact that they produced the contract and say this is a contract dispute, and it's not even with the nurse because he doesn't claim he owns it. He claims somebody else owns it.  She, I'm sorry. That it's somebody else who is a party to this contract. So not only did they present physically, by the way, but they're also – But the physical evidence they presented said, yes, it's a rental agreement, but no, you can't take it away from the hospital or the care center. It didn't say precisely that, and ultimately our clients – What did it say? It say you can't take it away without permission by the owner, correct? Well, let's – here's the language. So tell – because I had some trouble with this language, too. Customers shall not in any way attempt to transfer equipment to a location other than the customer's address or residence as noted on this invoice. Now, what was the address or residence as noted on the invoice? That would have been his mother's address, Wally Nichols' address, and that was something that he had cleared through his own correspondence. So the address on the invoice was the mother – was not the care center? I believe it was community care center. Right. But there was – the important fact here is that it's a contract, and we have somebody who is a party to that contract and their authorized representative. He was contacting SuperCare. By the way, Judge Baio has always cautioned me not to read ambiguity into clearness, but it does say the customer's address or residence as noted on this invoice. As noted on this invoice, does that refer to address or residence or both? It refers to the address, I believe, that is listed there. No, but I guess my question is, does this agreement allow you to take the air mattress to her residence or the address on the invoice, or are they meant to be the same thing? It certainly does permit that because there was – we had – Mr. Nichols had arranged for that to happen. Now, as far as – I just want to be clear. The terms of the contract shouldn't be considered in probable cause, and I think that is the overarching issue because whether or not somebody would be in violation of it, that's irrelevant to probable cause. If you happen to be violating the terms of the rental agreement, there are civil remedies for that that CCRC or SuperCare, whoever is claiming to be harmed, would have. But California Penal Code Section 15 defines what a crime is, and then we have an entirely different section describing what a contract is. This is a contract. It's not a crime. Therefore, whether or not he would be technically in violation of it, it's irrelevant to probable cause, and that's, at least from my perspective, seems absolutely inescapable. Thank you very much. Thank you, Your Honor. Oh, did you have no more questions? No more questions, and you've exceeded your time. Sorry, my apologies. Thank you very much. Go ahead. Good morning. Alana Rotter for the appellees, officers Foster and Macias. It sounds like the court is focused on the qualified immunity analysis. Well, you should argue whatever you want to. I must say I find it very difficult to believe that there was probable cause in this case to arrest these guys for grand theft. So you want to start there, that's fine, but I think qualified immunity is your better shot. I think qualified immunity is my best shot, and I think the clearly established prong is where the action is in this case. Okay, so let me give you a hypothetical. I think it's pretty close to this case. Somebody says, I think those two guys are stealing a car, and the police officers chase them down, and they produce the rental agreement from Hertz, and the officer says, I glanced at it briefly, but the other guy told me you were stealing a car, so I arrested you. Would any reasonably objective police officer under that circumstance think there was probable cause to arrest them for grand theft auto? I think that case would trigger the rule that an officer must do more than simply accept the reporter's statement at face value. They have to do some kind of interview for the basis. Why is that any different in this case? What happens here is the nurse says, stop thief, they're stealing an air mattress, and they not only bring the mattress back to the place where it was taken from, they say, we have the right to this air mattress, here's our lease. Why is that any, the cases strike me as very close. I would say, first of all, the nurse didn't more than just say, hey, these guys are stealing a mattress. The nurse gave a much more detailed explanation of what had happened, that she had called the owner of the mattress, who said this mattress is not supposed to be leaving the premises, so now we don't just have, hey, they're taking it, we have more facts about what had happened, that she had called, that she had verified that it was not supposed to leave, that they were now doing something that is contrary to the permission of the owner. And the fact that they brought the mattress back, I don't think negates an intent for theft, because had she not stopped them. Not an intent for theft, though, but doesn't it say within the statute itself, you have to permanently deprive the person? Permanently, with the intent to keep it permanently or for an unreasonable time. So the question is, taking it without consent, with the intent. So at the moment that they took it, it may very well have been their intent to keep it for an unreasonable time. The fact that once the police have one of the brothers, and the other brother has taken the mattress away, and the police say to the one who's there, get him back, you're not allowed to take this mattress. The fact that then, once the police have intervened, and they're caught essentially. He comes back with the contract to explain the situation. He indicates, contrary to the citizen's arrest report, that he's actually cleared it with the rental company, that he can take it to the mother's home. He brings the mattress back. So he not only, it's like you're saying he's brought back stolen goods because the brother's been arrested. He actually shows that they have a right to this, even though it has the address of the super care. He gives a contrary explanation. So now you have two plausible explanations. How is that now, under the qualified immunity analysis, the second prong, clearly established law, you have this intent to permanently deprive. Or he's brought it back. Permanently or for an unreasonable time. So I just want to get that in. Yeah. Well, because even if it. Well, if it was ice cream, obviously, you know, 20 minutes in the hot sun. But this is a mattress. Yeah. Right. I would say it goes to the qualified immunity analysis because there are numerous cases, both in the Ninth Circuit and elsewhere, that say when an officer is on the ground faced with competing stories, he's not obligated to accept the suspect's explanation because the suspect will often. I'm sorry, Your Honor. I'm sorry. The suspect will often proffer an innocent explanation. Not many suspects, not all suspects, are going to say, oh, I did it. You know, oh, I did have permission. Oh, you know, that was a mistake. Oh, I was confused. Suspects all the time are saying things. And the police are often faced with conflicting. Well, I'm with you up to that point. And here's the problem with your argument from my perspective. The second brother not only shows up and says, no, no, they're lying. We have permission to take it. Now you've got a he said. He said, he said, and she said, and the cop can believe who he wants to believe. He produces the lease agreement. But the lease agreement says. Well, I don't know what the lease agreement says, frankly. I don't know whether it says you can take it to the residence or the address noted on the invoice or whether they're meant to be the same thing. And since I can't interpret it, but that's not the important point. The important point is the police officer knows at that point that they've leased this air mattress. They've got documentary evidence. And the police officer doesn't say, well, I carefully parsed this phrase and said to myself, well, no, they are prohibited from moving it from the hospital. The police officer now knows that it's not the hospital, the care center's air mattress. The person who was called in doesn't have any ownership interest. They're not a party to the lease. And these guys have a piece of paper that says that they have some right to possession of this air mattress. At that point, he arrests them for grand theft. I mean, right up until the point that they produce the document that says we're entitled to hold this thing, I'm with you. But at that point, can you really say it's more likely than not that they're committing grand theft? Well, again, we're under the clearly established assessment. We've got all these cases that your opponent cites. It says, look, if it's just a contract dispute, if it's a lease dispute, if it's something like that, that doesn't show probable cause that a crime is being committed. I would say just because there is a lease or a contract somewhere in the fact pattern does not mean that forever anything that happens between those parties with regard to that property is a civil dispute. So let's assume, as you read this agreement, that they can't move it from the care center to the house. And they do. So they can use it for the balance of the lease period at the house. Is that grand theft under any reading of California law? Well, we don't know, first of all, what the balance of the lease period was. Well, we have it. It says there's a lease, but we don't know what the terms were and for how long. So is there any evidence that they intend to use this, anything except for the purposes in the lease? No, Your Honor, but the question is, once the owner has reportedly said, this mattress has to stay here, and the brothers say, we're taking it. And by the way, when the first officer came and spoke to the first brother, he wouldn't say where the mattress had gone. He refused to answer that information. So the officer is faced with a situation where apparently the owner has said, this property can't be taken, and the property has been taken. Now, at that point, you're moving it without a right because it still belongs to the mattress. Moving it without a right is not a crime, is it? No, but taking it away. You have to, as Judge Kobayashi said, you have to intend to deprive the owner of it for either permanently or for a significant period of time. What's the evidence that they're doing that? As opposed to just, even if you read this contract the way you do, breaching the contract. Well, given the whole constellation of facts on the ground, which is that the brothers had been asked, the police knew that the brothers had been asked to not take it, to let the nurse try to find out. Now, when the brother says, well, I had permission, the nurse says, let me try to work this out. Just stay here. We'll work this out. And he says, no, I'm going. I'm taking this thing. And he flees with the mattress. Now, the police could think, well, we don't know what he's going to do with the mattress at that moment. We don't know what his plan is. Maybe he's gotten so mad that he's just going to take it and run. Maybe he's going to take it for an indefinite period of time. But the police could make the assessment that the brothers are not looking reasonable here in their refusal to wait. I think that's a fair thing to say up to the arrest of the first brother. But when the second brother comes back with the contract and with the darn mattress, I mean, at that point, the investigation now has additional facts that completely contradict what the nurse is saying. And she's not even a party to the contract. I'm not sure that – I don't think it matters that she's not a party to the contract. Someone can report a theft without being the owner of the property that was stolen. No, understood. But now that it becomes the independent obligation to investigate, what is this contractual agreement? What your opponent is saying is saying now it's a civil dispute. She has no knowledge about the contract. So the case law is that officers don't have to conduct a mini-trial on the scene. They need to talk to the witnesses. But they need to independently investigate. Now, the evidence is that the officer tried to call the rental company himself and was not able to reach them. Now, I understand that my opponent says it's not clear exactly when he did that. But the officer says, I did that as part of my investigation. There's no evidence that the officer continued to investigate after this particular incident on the ground was over. So he tries to make a phone call. He's unable to resolve it in that moment. So he does the best he can. Again, this is qualified immunity. Would every reasonable officer or no reasonable officer have thought this was arguable, probable cause? And that's a high bar. As I mentioned in the 28-J letter that I hope your honors received, this court just last month, again, reaffirmed that qualified immunity is an exacting standard. You need a case that is factually on point. And general pronouncements about what the law is, that civil disputes don't constitute probable cause, are usually not enough in the same sense that the well-known statement that excessive force is unconstitutional is not enough to make every excessive force case clearly established violation. In the same way, a broad statement that civil disputes don't give rise to probable cause doesn't establish in a particular situation where is this. Is this a civil dispute? Is it really the case that no civil dispute ever spills over into criminal? And, in fact, one of the cases cited in Allen, which is the Peterson case, has this broad language in it. And a later case in that circuit, the Eighth Circuit, comes along and says, Peterson is overbroad. It doesn't mean that civil disputes can never give rise to probable cause. Ms. Rotter, I'm sorry, but you've exceeded your time. Thank you very much. The case of Nichols v. Macias and Foster will be submitted.
judges: Bea, Hurwitz, Kobayashi